

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00874-CV

**IN THE INTEREST OF A.L.W.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2024PA00317
Honorable Kimberly Burley, Judge Presiding

Opinion by:      Irene Rios, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
          Irene Rios, Justice
          Lori Massey Brissette, Justice

Delivered and Filed: July 30, 2025

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child, A.L.W.[1] In a single issue, Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in the child's best interest. We affirm.

### BACKGROUND

The Department initially became involved when it received a referral concerning Mother's drug use and A.L.W.'s safety. Mother and A.L.W. lived with G.G., Mother's grandmother and A.L.W.'s great-grandmother.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parent as "Mother," the child using its initials or as "the child," and other persons by pseudonyms. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

On February 28, 2024, the Department filed a petition seeking protection of A.L.W. and termination of Mother's parental rights to the child. The trial court held a two-day bench trial on December 10, 2024, and December 13, 2024 via Zoom. The trial court heard testimony from Cynthia Cisneros and Rita Garcia, the Department's caseworkers; Mother; and G.G. Mother appeared for the first day of trial. During her case-in-chief Mother's virtual connection to the proceeding was lost. When the connection could not be restored, the trial court concluded the proceeding and continued the trial. The trial resumed on December 13, 2024, and Mother did not appear on the second day of trial.

On February 10, 2025, the trial court signed an order terminating Mother's parental rights to A.L.W. The trial court terminated Mother's parental rights based on statutory grounds (D), (N), and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (N), (O). The trial court also found it was in the child's best interest to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *Id*. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—

Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *See J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

## BEST INTEREST

Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in A.L.W.'s best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2]

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether

*See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* Thus, a best interest finding does not require proof of any particular factor. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.). In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

---

the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

In addition to the initial concerns regarding A.L.W.'s safety and Mother's drug use, the Department also had concerns about A.L.W.'s home environment. Apart from G.G.'s bedroom, where A.L.W. slept, the home contained a lot of trash and was very cluttered. Mother also suffered from anxiety and depression, and Mother admitted she was not taking her medication. As a result, Mother's case was initially referred to Family Based Safety Services ("FBS"). Mother was placed on a safety plan during FBS and A.L.W. was placed under G.G.'s care. However, shortly after the family was referred to FBS, Mother engaged in domestic violence in the home. Mother tased her pregnant sister who also lived in the home with Mother, A.L.W., and G.G. A.L.W. was present during the altercation. Mother was arrested and spent two months in jail. The Department pulled the case out of FBS and filed its petition seeking protection of A.L.W. and termination of parental rights.

To address the concerns that led to the Department's filing its petition, the Department implemented a service plan for Mother. Mother's service plan, which was admitted into evidence, required her to maintain stable employment and housing, participate and complete a parenting class and domestic violence class, participate and complete a psychological evaluation, undergo drug testing, participate and complete a drug and alcohol assessment and follow all recommendations, and engage in individual counseling. Garcia, one of the Department's caseworkers, testified that Mother had completed the psychological evaluation required by her service plan, but Mother had not engaged in any of the other services. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (concluding evidence that a parent's failure to comply with the court-ordered service plan may also support the trial court's best-interest determination); *In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *9 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (holding failure to complete family service plan is indicative of failure to prioritize child). Mother refused to sign the plan, and at trial, Mother testified she did not recall being presented with a

service plan. However, the trial court could have disbelieved Mother's self-serving testimony, especially considering Mother completed the psychological evaluation which indicates Mother was aware of the services she was required to engage in. *See J.F.-G.*, 627 S.W.3d at 312. Further, Mother's signature line on the service plan states: "refused to sign."

With respect to the concerns of domestic violence, Mother admitted to blacking out and "being very angry and busting out the door" when she tased her pregnant sister for which Mother was arrested. Mother also admitted family members were concerned about her threats to tase family members who live in the home with her and A.L.W. Mother admitted she broke a window at G.G.'s house, and G.G. agreed Mother was violent while she lived with G.G. G.G. testified Mother tried taking her cell phone so family members could not contact her for a safety check. G.G. also testified Mother accumulated trash throughout G.G.'s house and threatened people in the house with a taser.

It is axiomatic that a child's exposure to violence can produce a home environment that endangers a child's well-being. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being [and d]omestic violence, want of self[-]control, and propensity for violence may be considered as evidence of endangerment."); *see also In re S.G.*, No. 02-14-00245-CV, 2015 WL 392772, at *5 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.) (stating "abusive or violent conduct by a parent may produce an environment that endangers the child's physical or emotional well-being"). The trial court heard testimony that Mother's acts of violence occurred in A.L.W.'s presence. Although the endangering conduct may not have been directed at A.L.W., the trial court could have reasonably concluded the exposure to violence endangered the child. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[E]ndangering conduct is not limited to actions directed towards the child."); *see also J.I.T.P.*, 99 S.W.3d at 846 (holding exposure to

domestic violence supports the trial court's finding that termination is in the child's best interest even when the child is not the intended victim of the violence). Mother's arrest for tasing her pregnant sister and two-month incarceration could also support the trial court's best interest finding. *See In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (stating criminal activity that exposes parent to incarceration is conduct that endangers child's physical and emotional well-being); *see also In re T.G.R.-M.*, 404 S.W.3d at 15 (concluding that although criminal charges were ultimately dismissed, charges supported termination of parent's rights because each time mother was jailed, she was absent from child's life and unable to provide for child's physical and emotional needs during that time). The trial court could have reasonably concluded from the evidence regarding Mother's violent outbursts that reunifying A.L.W. with Mother would expose her to Mother's violent propensities and criminal conduct, especially given that Mother failed to engage in domestic violence classes or individual counseling to address the Department's concerns. And, as explained more fully below, the trial court could have reasonably concluded that Mother's refusal to treat her bipolar condition exposed the child to volatile conditions.

Furthermore, Garcia testified she could not verify that Mother had stable housing or employment throughout the pendency of the case. Mother claimed she had recently moved in with a friend from middle school and could stay there until she was "back on her feet." But, when asked his name, Mother could only remember his first name. She could not recall his last name. Additionally, Mother stated she was currently looking for a job because she could only find temporary employment. Some weeks she had no work, and other weeks she worked no more than three days a week, earning about $100 a day. Garcia testified, however, that Mother had never provided proof of a lease with respect to her housing or check stubs proving employment.

Evidence regarding Mother's lack of stable housing and employment supports the trial court's finding that termination of Mother's parental rights is in A.L.W.'s best interest. *See In re A.Y.G.*, No. 04-24-00332-CV, 2024 WL 4614575, at *5 (Tex. App.—San Antonio Oct. 30, 2024, no pet.) (mem. op.) (holding parent's failure to provide proof of income or stable housing supported the factfinder's conclusion that termination of parental rights was in the child's best interest).

Additionally, Mother's failure to maintain regular visits with A.L.W. supports the trial court's finding that termination is in A.L.W.'s best interest. *See In re J.J.T.*, No. 04-17-00328-CV, 2017 WL 4014612, at *4 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.) (holding a parent's failure to visit the child while the case was pending supports the trial court's best-interest finding); *see also In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *9 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) (providing parent's failure to visit child on a regular basis supports factfinder's determination that parent is unwilling or unable to fulfill child's most basic emotional and physical needs and finding that termination is in child's best interest); *In re A.S.*, No. 02-16-00284-CV, 2017 WL 371496, at *6 (Tex. App.—Fort Worth Jan. 26, 2017, pet. denied) (mem. op.) (stating parent's failure to visit child during pendency of case supported finding that parent would be unable to meet child's emotional and physical needs in the future). According to Garcia, Mother showed a pattern of making herself available, expressing interest, and then disappearing. Garcia added that A.L.W., who was two years old at the time of trial, needed consistent visitation with Mother to establish a bond with her. Mother, however, missed seventy-three percent of her visits with A.L.W. Garcia agreed that Mother made some efforts, but they were minimal, and Mother largely had not addressed the issues that brought A.L.W. into the Department's care. Despite Mother's testimony regarding her irregular employment, Mother claimed she missed many of her visits because of work, including travelling to Las Vegas for a

while to look for work. Mother added that when she did visit, however, she brought A.L.W. clothes, toys, and food, but G.G. only recalled one time that Mother provided anything for A.L.W. G.G. testified that, in her opinion, Mother is not ready to parent A.L.W. and may never be ready. Garcia concluded that termination of Mother's parental rights is in A.L.W.'s best interest citing, among other things, Mother's failure to make herself available for A.L.W. and her sporadic attendance in A.L.W.'s life.

Mother's untreated mental health concerns also support the trial court's finding that termination of Mother's parental rights is in A.L.W.'s best interest. In addition to Mother indicating she suffered from anxiety and depression at the onset of the Department's case, Mother testified at trial that she has been diagnosed with bipolar disorder and post-traumatic stress disorder. Mother acknowledged she was not taking her mental health medication, but claimed she was trying to find work so that she could get back on them. Additionally, Mother first blamed her inability to complete parenting class on her lack of transportation but then stated she was struggling because of her untreated mental health. She testified she "never really reached out" to the Department because she was going through "a lot of things," and she was being "hit really hard" by it. She stated her mental illnesses prevented her from successfully addressing the Department's concerns. When the Department's caseworker testified at trial, Garcia confirmed that she has not received any information that would indicate Mother is back on her mental health medications. Although Mother admitted she was having trouble taking care of herself, she denied it would interfere with her ability to take care of A.L.W.

Evidence that a parent suffers from mental illness alone is not grounds for terminating the parent-child relationship. *See Maxwell v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00242-CV, 2012 WL 987787, at *9 (Tex. App.—Austin Mar. 23, 2012, no pet.). However, untreated mental illness can expose a child to endangerment and is a factor the court may consider.

*See In re S.R.*, 452 S.W.3d 351, 363 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Maxwell*, 2012 WL 987787, at *10). The trial court could have determined Mother's failure to take medication to treat mental health illnesses creates an environment that endangers A.L.W.'s physical or emotional well-being, especially considering the evidence of Mother's violent outbursts. *See In re S.R.*, 452 S.W.3d at 363; *see also In re M.R.P.*, No. 04-22-00312-CV, 2022 WL 6815173, at *6 (Tex. App.—San Antonio Oct. 12, 2022, pet. denied) (mem. op.) (concluding a parent's refusal to acknowledge and treat a mental health diagnosis can support a finding that termination is in a child's best interest). Moreover, the trial court could have concluded that Mother's unaddressed mental health diagnoses thwart her ability to care for A.L.W.'s current and future physical and emotional needs. *See In re A.G.*, No. 05-15-01298-CV, 2016 WL 3225894, at *6–7 (Tex. App.—Dallas June 10, 2016, pet. denied) (mem. op.) (holding Mother's unaddressed mental health problems impeded her ability to parent and care for her children's current and future physical and emotional needs).

Mother's failure to engage in individual counseling supports the trial court's best-interest finding and demonstrates her unwillingness to effect positive environmental and personal changes. *See* TEX. FAM. CODE ANN. § 263.307(b)(10)–(11) (providing the trial court considers the willingness and ability of the parent "to seek out, accept, and complete counseling services[;]" and "to effect positive environmental and personal changes within a reasonable period of time" when determining whether parental termination is in the children's best interests); *see also In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A [factfinder] may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."). Mother claimed the Department failed to give her the therapist's contact information. Although the caseworkers who testified at trial claimed Mother

sporadically involved herself with her child's case, the Department did not specifically refute Mother's claim that she was not provided with a therapist's contact information. Nonetheless, Mother's service plan that was admitted into evidence provided a counseling service, its address, and phone number along with the instructions for Mother to contact the service and schedule counseling services. As mentioned above, the trial court could have reasonably concluded Mother was aware of her service plan and could have disbelieved Mother's testimony that she did not receive the service plan.

Finally, one of the Department's initial concerns was that Mother was abusing drugs. According to the service plan, Mother had previously tested positive for marijuana and appeared at G.G.'s house under the influence of unknown substances. Mother self-reported that she began abusing Xanax when she was fifteen years old, taking up to twenty pills at a time. Mother claimed she stopped using Xanax when she became pregnant with A.L.W., but then reported she was using marijuana a week before the Department's case began. As a result of her drug use, Mother identified her own need for substance abuse treatment. Based on this information, the Department requested Mother undergo random drug testing and take a drug assessment. As mentioned above, Mother did not engage in services, including her drug assessment. Garcia stated Mother took only two drug tests with the last one being three months before trial. According to Garcia, the Department requested Mother test again two months before trial, but Garcia's records did not indicate Mother took the test. Mother claimed, on the other hand, that she had taken a drug test about a month or two prior to trial but she did not know the results of the test she allegedly took. Although there was not specific evidence concerning how many tests Mother missed, nor was there evidence providing the results of the two tests Mother took, Garcia expressed the Department still had concerns that Mother was abusing drugs. As the factfinder, the trial court could have reasonably concluded from this disputed evidence that Mother failed to take some of the drug

tests—including a test only two months before trial—because she was using illicit drugs. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at \*4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."). Undoubtedly, the Department could have done a much better job developing the record regarding Mother's drug use.[4] Nevertheless, based on this evidence, the trial

---

[4] Because "[d]ue process requires meaningful appellate review of orders terminating parental rights," this court has repeatedly expressed concerns about underdeveloped records in parental termination appeals. *See In re Z.R.M.*, 665 S.W.3d 825, 829 n.6 (Tex. App.—San Antonio 2023, pet. denied); *In re N.L.S.*, No. 04-23-00251-CV, 2023 WL 4338949, at \*7 n.9 (Tex. App.—San Antonio July 5, 2023, no pet.) (mem. op.) ("In this case in which the parental rights of the parents of four children were terminated, the reporter's record from the trial is a scant forty-three pages long, of which actual testimony is only about thirty-one pages."); *In re G.M.*, No. 04-19-00080-CV, 2019 WL 3432088, at \*3 (Tex. App.—San Antonio July 31, 2019, pet. denied) (mem. op). (Watkins, J., concurring); *see also, e.g.*, *In re N.M.R.*, No. 04-22-00032-CV, 2022 WL 3640223, at \*9 (Tex. App.—San Antonio Aug. 24, 2022, pet. denied) (mem. op.) ("The record evidence falls short of the requisite legal standard and fails to support termination of Mother's parental rights."); *In re M.A.D.V.*, No. 04-22-00131-CV, 2022 WL 3372416, at \*10–12 (Tex. App.—San Antonio Aug. 17, 2022, no pet.) (mem. op.) (reversing termination order and rendering judgment denying Department's petition for termination of father's rights on sufficiency grounds); *In re J.R.M.*, 647 S.W.3d 461, 469 (Tex. App.—San Antonio 2022, no pet.) (Rodriguez, J., dissenting) ("Because the long-term effects on a child whose relationship is forever and irrevocably severed from their parent are at stake, I urge the trial court and the parties to more completely develop the trial evidence in the future so that the depth of the appellate record is commensurate with the finality and gravity of parental termination."); *In re E.F.*, 591 S.W.3d 138, 150 (Tex. App.—San Antonio 2019, no pet.) (Chapa, J., dissenting) ("Looming deadlines and overcrowded dockets cannot justify shortcuts that undermine the truth-seeking function of our courts."); *In re K.M.J.*, Nos. 04-18-00727-CV & 04-18-00728-CV, 2019 WL 1459565, at \*1 (Tex. App.—San Antonio Apr. 3, 2019, pet. denied) (mem. op.) ("[W]e cannot say that the 'degree of proof' rose to the level of 'clear and convincing' as required to support the best interest findings."); *In re M.A.S.L.*, No. 04-18-00496-CV, 2018 WL 6624405, at \*5 (Tex. App.—San Antonio Dec. 19, 2018, no pet.) (mem. op.) (reversing termination order supported by legally and factually insufficient evidence where caseworker had no contact with father, did not meet with father to discuss family service plan, and had "no idea" whether he completed services); *In re R.M.P.*, No. 04-17-00666-CV, 2018 WL 2976451, at \*12 (Tex. App.—San Antonio June 13, 2018, pet. denied) (mem. op.) (Martinez, J., dissenting) ("'The law sets a high evidentiary bar for termination of parental rights. We do not alleviate the plight of Texas foster children by lowering that bar and perpetuating diminished judicial expectations of the proof that must be presented by the Department.'") (quoting *In re B.D.A.*, 546 S.W.3d 346, 393 (Tex. App.—Houston [1st Dist. 2018, pet. denied) (Massengale, J., dissenting on reh'g)); *In re J.A.J.*, No. 04-14-00684-CV, 2014 WL 7444340, at \*3 (Tex. App.—San Antonio Dec. 31, 2014, no pet.) (mem. op.) ("[W]e may exercise our broad discretion to remand for a new trial in the interest of justice when there is a probability that a case has not been fully developed for any reason."); *In re D.M.*, 452 S.W.3d 462, 475 (Tex. App.—San Antonio 2014, no pet.) (Martinez, J., dissenting) ("We are duty bound to carefully scrutinize termination proceedings and must strictly construe involuntary termination statutes in favor of the parent."); *In re U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at \*2 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (mem. op.) (finding the evidence legally insufficient to support the termination order but remanding the cause for a new trial in the interest of justice under Tex. R. App. P. 43.3(b)); *In re A.Q.W.*, 395 S.W.3d 285, 290–91 (Tex. App.—San Antonio 2013, no pet.), *overruled on other grounds by In re J.M.T.*, 617 S.W.3d 604, 610–11 (Tex. App.—San Antonio 2020, pet. denied) (en banc) (finding the evidence legally insufficient because the record did not support the State's argument that father had been jailed repeatedly or been in and out of drug treatment). Notably, all these cases were tried in Bexar County.

court could have reasonably concluded that Mother was engaged in illicit drug use and termination of her parental rights was in A.L.W.'s best interest. *See In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("[A] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being."); *see also In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding factfinder could infer that parent's failure to submit to court-ordered drug testing indicated parent was avoiding testing because they were using drugs).

While testifying, Mother expressed a desire to extend the case and reengage in services with the Department. However, aside from claiming she needed to first address her mental illness, Mother failed to explain why she did not engage in services during the year the case was pending. Although Mother's acknowledgment that she needs to address her mental illness is commendable, the trial court could have reasonably concluded that Mother's failure to take any action to address her mental illness during the pendency of the case indicates she will not address her mental illness and engage in services in the future if the case were extended.

"When a child is too young to express her desires, the factfinder may consider whether the child has bonded with her caregivers, is well-cared for by them, and whether the child has spent minimal time with a parent." *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.) (en banc). Here, the trial court heard testimony that A.L.W., who was two-years old at the time of trial, is currently in a kinship placement with G.G., and A.L.W.'s needs are being met. Cisneros testified that A.L.W. is very bonded to G.G. Cisneros added that A.L.W. calls G.G. "Mama," and they have a "very good relationship." G.G. expressed a desire to adopt A.L.W. if Mother's parental rights are terminated, although G.G. agreed she would split custody with Mother if Mother's parental rights are not terminated. Garcia testified adoption by G.G. would be in the

child's best interest because G.G. and A.L.W. are bonded, and Mother's pattern of behavior remains unchanged. Mother missed seventy-three percent of her visits with A.L.W., during the pendency of the case, including going months at a time without seeing A.L.W. Mother even testified that A.L.W.'s placement with G.G. is the best place for her child.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in A.L.W.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

Accordingly, Mother's sole issue is overruled.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to A.L.W.

Irene Rios, Justice

- 15 -